1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
2                     DAVENPORT DIVISION

3
UNITED STATES OF AMERICA,        )
4                                )
        Plaintiff,               )
5                                )   ORIGINAL
        VS.                      )   CRIMINAL NO. 3:14-cr-65
6                                )
DIRK HAYO NOTMAN,                )
7                                )
        Defendant.               )
8                                )

9
                    TRANSCRIPT OF PROCEEDINGS
10                  BEFORE THE HONORABLE STEPHANIE M. ROSE
                  Friday, July 24, 2015; 11:00 a.m.
11                  DAVENPORT, IOWA

12
FOR THE PLAINTIFF:
13  RICHARD D. WESTPHAL
    Assistant United States Attorney
14  131 East Fourth Street
    Davenport, IA  52801
15

16  FOR THE DEFENDANT:
    WASSMER LAW OFFICE PLC
17  By:
    WEBB L. WASSMER
18  Attorney at Law
    5320 Winslow Road
19  Marion, IA  52302

20

21

22

23
            LINDA FAUROTE-EGBERS, CSR 622(IA), FCRR, RMR
24              FEDERAL OFFICIAL COURT REPORTER
                 131 East Fourth Street
25                Davenport, Iowa  52801

1          THE COURT:  We are here in the matter of United States

2    versus Dirk Hayo Notman, it is Case No. 3:14-cr-65.  The United

3    States Probation Office is represented by Christine Herrera.

4    The United States Attorneys Office is represented by Richard

5    Westphal and he is joined by the case agent and I don't remember

6    your name off the top of my head.

7          INSPECTOR LINDA JENSEN:  Linda Jensen.

8          THE COURT:  You testified before and I couldn't

9    remember your name.  The defendant is present and represented by

10   his attorney, Webb Wassmer.  Do you remember that you pled

11   guilty to the one-count Indictment that had been filed in

12   November of 2014?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And specifically you pled guilty to

15   possession of child pornography and I assume you remember that

16   because of your prior conviction, that offense is punishable by

17   at least 10 years and up to 20 years imprisonment, a fine of up

18   to $250,000, at least five years up to life on supervised

19   release, and a $100 special assessment.  Do you remember those

20   potential maximum penalties?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  You understand you are here today for

23   purposes of being sentenced?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I received and read the Presentence

1 Investigation Report, the most recent report is dated July 13th

2 of 2015, and it is filed at Docket 50 in the records of the

3 Court.  I have also received and read the sentencing memorandums

4 and Motions and attachments that the parties have filed which

5 include Dockets 51, 52, and 53, as well as the exhibits that Mr.

6 Wassmer forwarded to me.  Thank you for getting those to me

7 ahead of the hearing.  I appreciate that.

8          Mr. Westphal, on behalf of the United States, did you

9 have a chance to review the Presentence Investigation Report?

10          MR. WESTPHAL:  I did, Your Honor.

11          THE COURT:  It is my understanding there's one

12 Guideline dispute revolving around the 2G2.2(b)(5) adjustment

13 for a pattern of behavior, two disputed supervised release

14 conditions relating to the computer and the camera, and then a

15 determination of the ultimate sentence to be imposed.  Other

16 than those matters, are you aware of any Guideline matters or

17 factual issues I need to resolve today?

18          MR. WESTPHAL:  No.  I believe that's accurate, Your

19 Honor.

20          THE COURT:  Thank you, Mr. Westphal.  Mr. Wassmer, did

21 you have a chance to review the Presentence Report with your

22 client?

23          MR. WASSMER:  I did, Your Honor.

24          THE COURT:  Can you make a brief record how you did

25 that with him?  Did you mail it to him, did you visit him?

1    MR. WASSMER:  I mailed a copy of the draft Presentence

2  Report to Mr. Notman with a letter outlining my thoughts on

3  potential objections and issues to discuss.  He sent me a letter

4  back, about a three-page letter with his thoughts mostly on the

5  factual type issues.  I then talked to him on the telephone

6  because we pretty much agreed on what we needed to talk about

7  and object to and I talked to him a while on the phone about it

8  and then filed the objections then I also mailed him a copy of

9  the final Presentence Report after that was prepared.

10    THE COURT:  Other than the matters I've outlined with

11  Mr. Westphal, anything else from Mr. Notman's perspective I

12  would need to resolve today?

13    MR. WASSMER:  I think today is a minor issue on the

14  two financial conditions that are proposed, we have requested

15  some limiting language because I do anticipate that the -- any

16  financial penalty will get paid in the near future here.  We

17  paid the special assessment this morning.  If the fine and

18  restitution are within the realm of reason, they will get paid

19  within the next week or two.

20    THE COURT:  Thank you, Mr. Wassmer.  Mr. Notman, did

21  you have plenty of time to review the Presentence Report with

22  your lawyer?

23    THE DEFENDANT:  Yes, ma'am, I did.

24    THE COURT:  Was he able to answer any questions you

25  may have had?

1    THE DEFENDANT:  Yes, he did.

2    THE COURT:  Have you been happy with him as your

3 lawyer?

4    THE DEFENDANT:  I would say overall, yes.  Kind of

5 difficult.

6    THE COURT:  Sometimes they have to be the bearer of

7 bad news, but --

8    MR. WASSMER:  Explaining the 10-year mandatory minimum

9 has been an issue.

10    THE COURT:  That, for the record, is not his fault,

11 but good.  We wanted to make sure things were going well there.

12 Then let's talk about first the disputed Guideline issue which

13 is this five-level increase for the pattern of activity

14 involving sexual abuse or exploitation of a minor.  The United

15 States bears the burden of proving that particular adjustment by

16 a preponderance of the evidence.  It doesn't appear the

17 particular facts are in dispute, it is a thorny legal issue, and

18 I think both parties have done a good job briefing those

19 particular issues.  Any additional evidence or argument you

20 would like to present, Mr. Westphal?

21    MR. WESTPHAL:  Your Honor, maybe just present to the

22 Court, if the Court will allow what I think the main parts of

23 the government's response are.  I know the Court has obviously

24 read both the Sentencing Memoranda.  I think at the core of the

25 defendant's argument is the ex post facto based on whether or

not we are imposing or the Court having to find the defendant
committed a crime that occurred back in the seventies or
increasing the penalty for a crime back in the seventies.

I think while the Eighth Circuit hasn't really decided
the issue related to this Guideline and hasn't really decided an
issue close to this, a lot of the case law, for better or for
worse, draws a line on whether or not the Court is focusing on
imposing a fine for the crime presently charged or imposing a
crime -- or imposing a penalty for a past crime and in this case
the government's position is because we are imposing a
sentencing consideration on the present crime, possession of
child pornography, that that does not make this an ex post facto
type violation.

Ex post facto at its core is passing a law that makes
something a crime that wasn't a crime before or increasing the
penalty for a crime after the person has already committed it
and that is not what is happening here. It is the possession of
child pornography crime that is being enhanced by this pattern
of activity.

I think the government's position is supported -- we
have the First Circuit case which again doesn't directly decide
the issue that we are presenting for the Court to consider here
today, the Amirault case, in that case it was a departure issue,
but the analysis in that case considered the pattern of activity
enhancement and whether or not that was an ex post facto

violation, kind of based on that same reasoning because the
Court was merely increasing the punishment for the present
crime, it was an ex post facto or due process violation.

A lot of the defenses are based somewhat factually and
as the Court knows, there hadn't been any factual disputes.  The
facts are that the defendant admitted to sometime back in the
mid-seventies meeting an individual who told him he was 17, the
defendant admits he believed he was 15, and paid to have sex
with him five or six times which factually could be found
supported.

The defense argues that factually in I think the Ohio
statute that is insufficient to prove that he knew -- would have
known the defendant was under 16 in relation to the Florida
statute.  I believe the factual argument is whether or not there
is sufficient proof that the victim in Florida was not of chaste
character, so given more factual than legal, so I think also
part of the government's position is looking overall, number
one, the Guideline enhancement seems more focused on conduct,
not just proof of the elements.

The pattern of activity amendment was added with the
committee comments noting that it was broader, it was a
broad-based application, and it was broader even than the normal
relevant conduct type conduct and I think the cases that look --
cases from other circuits that in reviewing the application of
this enhancement impose no temporal limitations on it and no

1  real major discussion of proof of the elements also supports the

2  government's position that this is a conduct based on

3  recidivist-type enhancement and it is not a violation of the ex

4  post facto part of the Constitution or the same as due process.

5        THE COURT:  Thank you, Mr. Westphal.  Mr. Wassmer?

6        MR. WASSMER:  Yes.  Thank you.  First I note there is

7  a factual dispute here and that is whether the government has

8  proven that the individual in Ohio was actually 15 as opposed to

9  being 16 or older.  I think the Court can avoid all of the

10  complicated ex post facto and due process issues by first

11  focusing on the fact question.  Was this individual actually 15

12  or was Ohio law violated.  If the Court doesn't find that this

13  individual was actually 15, I don't think the Court needs to

14  reach the ex post facto issues because the Guideline will not

15  apply at all under the terms of the Guideline.

16        At this point I would like to offer Exhibits A, B, and

17  C, A and B I previously filed at Docket 53, Exhibit C I would

18  request leave to file that under seal.  It is the Memorandum of

19  Interview --

20        THE COURT:  That should be sealed.

21        MR. WASSMER:  I want to point out two things about the

22  Memorandum of Interview because this is the only evidence of the

23  age of the individual in Ohio which is contained in the

24  Memorandum of Interview.  First, the first I think three pages

25  are Inspector Jensen's summary of what she was told by Mr.

1  Notman and on the middle of the second page basically she

2  states, "Mr. Notman than confessed to picking up the boy who

3  said he was 17 years old outside of a gay bar near Dayton, Ohio.

4  Notman admitted taking the boy back to his apartment and having

5  anal sex with him and giving him 10 to $15 each time.  This

6  occurred five to six times over a six-month period," then Mr.

7  Notman was asked how old he actually thought this boy was and he

8  said he thought he was 15 years old.

9          Another portion of the Memorandum of Interview is a

10  written statement by Mr. Notman that he wrote out after he was

11  given his Miranda rights and in that statement he described the

12  person in Ohio as a hustler in Dayton, Ohio, about 17 to 18, so

13  the written statement he doesn't have anything about believing

14  that the person is 15 or younger, says 17 to 18.

15          Couple things about that.  I think first under either

16  18, United States Code, 2243(a) or the Ohio statute, I will get

17  to you in a moment about which Ohio statute might apply here,

18  the person has to be shown to be actually under the age of 16

19  and in my view the evidence that we have here doesn't meet that

20  test.  The person said he was 17, and then Mr. Notman's

21  subjective belief he might be younger than that, might be 15, I

22  don't think is sufficient.  I know under the federal statute at

23  least the defendant's subjective belief as to the age of the

24  victim is not relevant.

25          THE COURT:  I actually agree with you.  You can keep

1  arguing, but I agree with you.  I don't think here we know what

2  the age of that person was and I agree it is a problem in terms

3  of application of this.

4        MR. WASSMER:  Do you want me to go ahead and address

5  the ex post facto issue too or do you want to decide it there?

6        THE COURT:  I don't think the adjustment applies.  I

7  am not bothered in different facts, ex post facto or due process

8  or even the temporal issue here.  If this had been a

9  five-year-old and everybody knew it was a five-year-old, I

10  wouldn't have any problem applying this adjustment.  I do think

11  the problem comes through no fault of Mr. Westphal's or the

12  government with the fact we just don't know the age of this

13  person and frankly between the ages of 15 and 17, even a doctor

14  would probably have trouble telling the difference in age

15  between this person and given the shifting state laws frankly,

16  you know, the fact that it was a boy was a problem at some point

17  in this statute it is so old, let alone the ages, let alone the

18  overlay of not knowing how old this boy is I think becomes a

19  problem so while it is certainly behavior that is worrisome, I

20  don't think it supports this particular adjustment and so I am

21  not going to apply the adjustment; but if you would like to make

22  any additional record, certainly you are welcome to do so.

23        MR. WASSMER:  I think only to the extent if the

24  government appeals this issue then we might have to.  I will

25  make a couple of quick points just for the record.  One thing I

1   didn't note in the brief, because it should have occurred to me

2   at the time but it didn't, the statute that Mr. Notman was

3   convicted under in this case, 18, United States Code, 2252 also

4   did not exist in the 1970s.  It was enacted in 1978.  I did note

5   in the Presentence Report it indicates that Mr. Notman was in

6   Ohio from '67 to '74 and left Ohio for Florida in '74 so the

7   Ohio conduct occurred prior to that then just on the circuit

8   cases that the government cites, I know most of those addressed

9   an issue that is not raised here which is a Guideline

10   interpretation issue as to whether or not the Guideline itself

11   has a temporal proximity requirement, you know, as the Court

12   knows some Guidelines, for example, criminal history limits the

13   age of conviction that the Court can count for criminal history.

14   Basically what these cases hold is the five-level adjustment at

15   issue here doesn't have that kind of limitation.  That's all I

16   would have on the Guideline issue.

17         THE COURT:  Thank you, Mr. Wassmer.  As I said, I will

18   find that in this case that particular adjustment should not be

19   applied just based on the -- the issues surrounding the proof of

20   the boy's age so let's go ahead and recalculate the Guidelines

21   and then we will talk about the supervised release conditions

22   and the 3553(a) factors.

23         The offense then begins with an 18 under 2G2.2(a)(1),

24   there's the two-level increase because the offense involved a

25   pre-pubescent minor, there's a four-level increase because the

1  offense involves materials that portray sadistic or masochistic

2  conduct or other depictions of violence, there's a two-level

3  increase because of the computer, the five-level increase for

4  the number of images involved, and here I would note that we are

5  talking about 118,000 still images plus 300 videos of child

6  pornography.  There's a two-level decrease for acceptance of

7  responsibility.  Is the government moving for that third level

8  as well?

9          MR. WESTPHAL:  We are, Your Honor.

10          THE COURT:  So that gives us another level subtracted

11  which leaves us at a total offense level of 28.  Mr. Notman is a

12  criminal history category of II.  Because of the mandatory

13  minimum in this case, the Guideline range essentially becomes

14  120 months to 120 months.  It otherwise would have been 87 to

15  108 months.  Probation is not an option.  Supervised release of

16  five years to life is applicable.  The suggested fine range

17  probably changed.  Let me double check that.  The suggested fine

18  range becomes $12,500 to $125,000, and there is the $100 special

19  assessment.  We have forfeiture here of all of the computer

20  equipment and images and related matters, but nothing beyond

21  those.

22          We have 115 identified victims through the National

23  Center for Missing and Exploited Children.  Of those we have one

24  identified victim known as J_Blonde, J, underscore, capital

25  B-l-o-n-d-e, who has requested restitution.  It appeared to me

1  from the briefings that the parties believe $3,000 is an

2  appropriate restitution amount to J_Blonde.  If the parties

3  continue to agree that's reasonable, I can live with that

4  particular amount.  He has requested $10,000 in his paperwork

5  and that was supported by the medical evidence he filed, but if

6  the parties have agreed otherwise, I can accept that joint

7  recommendation.  So that's where we find ourselves.

8           Let's talk then about the supervised release

9  conditions and clarify with respect to restitution.

10          Mr. Westphal, are there any victims who wish to be

11  heard?  I have read all of the Victim Impact Statements that

12  have been filed.  Anybody live that wants to be here today?

13          MR. WESTPHAL:  No, Your Honor.

14          THE COURT:  Can you outline for me what the

15  government's recommendation is with respect to in particular

16  supervised release, restitution, the sentence of imprisonment,

17  and anything else the government would like to add regarding

18  this particular case?

19          MR. WESTPHAL:  Thank you.  We will.  The government is

20  recommending the Court impose a 120-month sentence for Mr.

21  Notman based on the reasons in the offense conduct section,

22  nature and circumstances of this offense, certainly the history

23  and characteristics of this defendant, including his prior

24  criminal history which does include a prior conviction for

25  possession of child pornography out of the state of Florida.

1    The government is also recommending the Court impose

2  all the conditions of supervised release as outlined in the

3  Presentence Report, including the requirements as recommended

4  for involving the use of the Internet and the computer and the

5  use of a camera.  I think as noted in the government's

6  Sentencing Memorandum that the Eighth Circuit law, it is a

7  case-by-case basis based on various circumstances.  Specific in

8  this case the government recommends the Court impose those

9  release conditions.  These circumstances are more than merely

10  possessing the child pornography.

11    Besides the fact that Mr. Notman has been previously

12  convicted of these offenses, he certainly has admitted an

13  ongoing and long-standing interest and sexual attraction to

14  minor males.  He's admitted paying minor males in the past

15  repeatedly for sex acts.  In this case not only did he obtain --

16  not only did he register for the website that was the focus of

17  the suppression issue, but he also obtained videos of child

18  pornography using circumstantially proven the Internet.  He also

19  admitted downloading images over the Internet and using arguably

20  computer equipment to transfer those images to the substantial

21  number of DVDs that were seized as part of this investigation.

22    There's also the story that is noted in the offense

23  conduct on his computer that may be a fictional account,

24  certainly the evidence is the defendant's interest not only in

25  child pornography, but sex topics involving having sex with

1   males.

2          I think this is more than just a mere possession of

3   child pornography on the computer, there's enough active use of

4   the computer and enough additional information about Mr.

5   Notman's interest in sex with minors that would warrant a

6   restriction on his computer usage and access to the Internet.

7          For the same reasons the government thinks the

8   supervised release condition for prohibiting him from using a

9   video camera or other recording equipment.  As noted in the

10  Eighth Circuit cases, the rationale for this is the defendant

11  who has this type of interest, which Mr. Notman clearly does, is

12  prone to using a camera to personally possess digital images so

13  it is very strongly supported by these facts.  I think both

14  conditions are relevant.

15         The government is recommending the Court consider

16  imposing a fine of $30,000 which is an approximate -- a little

17  more than 10 percent for one year estimating the cost of

18  prosecution, noting that the defendant's past fine was $6,000

19  back in 1998 in the Florida case certainly warrants a higher

20  fine than that based on his ongoing criminal activity as

21  evidenced by the facts of this case.

22         THE COURT:  Did you say $30,000?

23         MR. WESTPHAL:  30,000, yes, which is higher than the

24  minimum, certainly not as high as the maximum, but I think

25  something more than the minimum is warranted by Mr. Notman's

1  offense conduct and his history in this case.

2       The government is recommending that the Court impose a

3  $3,000 restitution to the victim noted in the J_Blonde series.

4  The basis for that is certainly that general amount has been

5  approved by other Courts and also I think consistent with what

6  the government has recommended in other similar type cases, the

7  $3,000 restitution amount seems appropriate in this case.  Thank

8  you.

9       THE COURT:  Thank you, Mr. Westphal.  Mr. Wassmer,

10  what is your thought?

11       MR. WASSMER:  Thank you, Your Honor.  First on the

12  fine, we request the minimum 12,500 and that is sufficient under

13  the facts of this case.  With the restitution, the government

14  has recommended 3,000.  I think that's reasonable.  There was a

15  recent Eighth Circuit case cited in the brief that found that

16  3,000 was reasonable on similar facts.  I also would offer

17  Exhibits D and E which were restitution awards relating to

18  J_Blonde of 500 and 1,000 which is kind of a loose check on the

19  reasonableness of the amount so I think the 3,000 is available

20  there.

21       On the sentence itself, I think the Court is bound by

22  the mandatory minimum 10 years, cannot go below that.  We would

23  certainly be arguing for less than that if we didn't have the

24  mandatory minimum, but I don't think based on the facts and

25  circumstances of the case anything greater than the 120 months

1   is appropriate here.

2           On the conditions of supervised release, with respect

3   to the camera, I know there's Eighth Circuit case law that would

4   support the Court imposing that here, but I think the Court has

5   discretion to not impose it and the main factor that I would

6   point to is there is no evidence here that Mr. Notman has ever

7   used a camera to take any improper pictures of any minors and

8   therefore I think there's some tension in the Eighth Circuit

9   case law and talked about camera restrictions and some of the

10  more recent case law where they talk about rational, reasonable

11  relationship and the events and that that -- those are I think

12  kind of intentional and here I think certainly if there was

13  evidence Mr. Notman had taken pictures, the camera restriction

14  would be appropriate; but without that kind of evidence, I don't

15  think the camera restriction is appropriate.

16          On the computer issue, the Eighth Circuit does

17  generally not approve broad computer restrictions because of

18  First Amendment concerns.  Now, the Eighth Circuit case law has

19  said that you can impose that broad restriction, the Court can

20  do that when there is something more than mere downloading.  The

21  cases on that issue are all over the map.  I think both Mr.

22  Westphal and I could point to cases that would support either

23  direction.

24          I do want to address some of the things that the

25  government has raised here.  First, the government asserts that

1   Mr. Notman is a registered sex offender.  There's actually

2   nothing in the Presentence Report about being a registered sex

3   offender that I saw.  Paragraph 62 of the Search Warrant

4   Application indicates that at the time that application was

5   filed, Mr. Notman was not on the registered sex offender -- was

6   not a registered sex offender.  I will inform the Court he was

7   on the registry from 2001 to 2011 when he got out of prison in

8   2001 from the prior offense then 10 years under Iowa law which

9   then expired in 2011.  Now, by the time of the search and the

10  finding of the images here, he was not a registered sex

11  offender.

12          A couple of the things the government points to

13  admitting to sexual interest in minors, those kind of things, I

14  think that's probably true of any child porn offender that they

15  have sexual interest in minors.  I don't think it is anything

16  unique here.

17          The government points to the sexual encounters with

18  the minor males back in the 1970s.  I would point out those did

19  not involve a computer and there's no evidence here that Mr.

20  Notman has ever used a computer to communicate with minors.  I'm

21  sure the Court has had cases where that has occurred where the

22  defendant has been using a computer to solicit photos or

23  communicate with minors generally, but that is not -- there is

24  no evidence of that here.

25          The website in 2008, that was an issue we talked about

with respect to the Motion to Suppress, there was no evidence

that any child pornography was even on that website in 2008 or

that Mr. Notman viewed any child pornography or downloaded any

child pornography from that website.

The purchasing of the videos on the Internet, the

Presentence Report at Paragraph 9 states that those videos did

not contain images of children engaged in sexual activities.

Then the downloading and transferring to DVDs, that's basically

changing the format or storage for the videos, I think in the

case law what the concern there is that the Eighth Circuit has

expressed is transferring those DVDs then to someone else and

here there's no evidence that any DVDs or any photographs or

images were transferred by Mr. Notman to anyone else or that he

had any intent to do so or that anyone even knew of their

existence until the search warrant was executed.

Mr. Westphal has also pointed to the story that was

found on Mr. Notman's computer.  We have indicated in our

objections to the Presentence Report that he wrote that as part

of a class in prison when he was in prison in Florida previously

and there was also an indication, I don't know that Mr. Westphal

mentioned it today, but it is in his brief, about using multiple

e-mail addresses to search for child porn.  Actually the

Presentence Report in Paragraph 11 has two e-mail addresses

listed, both of which contain at least part of Mr. Notman's

name.  I think this goes into the sophisticated computer user

that the Eighth Circuit has talked about in some of the case
law, using part of your own name to do the search is probably
not all that sophisticated and I think the one address, the
Mediacom address is the one assigned by Mediacom based on the
name and I think the Eighth Circuit case law, what they are
talking about, is people who have enough computer knowledge to
hide their tracks, to use browsing software that doesn't keep
record of where you have been, putting things in password
protected folders, all those kinds of things which there is no
evidence of here so instead of the broad no access to a computer
that is proposed in the Presentence Report, we request a more
limited restriction that would be maybe duplicate of another
one, no visiting sites of child pornography or no downloading of
child pornography, no installation of any type of file-sharing
software, the Court is aware there's certain types of
file-sharing software that are used to search for these kind of
things, and then a search condition that the probation officer
can search Mr. Notman's computer at any point in time to look
for any evidence of visiting child pornography sites or
downloading child pornography.

        The only other issue I wanted to mention, typically
the Court recommends prison imposed by proximity to family.  Mr.
Notman does not have any family that he wishes to be in close
proximity to.  His request is that if the Court is willing to
make this recommendation to the Bureau of Prisons is for the

same prison in Orlando that he was in previously or some other
prison that is in a warmer climate due to his age.  He does have
some medical issues, the Bureau of Prisons may very well put him
in a medical type facility, certainly the Bureau of Prisons
would evaluate that to make the classification decision.  That
would be all I have unless the Court has questions.

THE COURT:  Thank you, Mr. Wassmer.  Mr. Notman, this
is the time in the sentencing proceeding when you are allowed to
say what you might want to say to me.  Is there anything you
want to say?  You certainly don't have to say anything.

MR. WASSMER:  Since we are appealing the denial of the
Motion to Suppress, I have advised Mr. Notman not to say
anything.

THE COURT:  Thanks, Mr. Wassmer.  This is a case that
is largely going to be governed by the mandatory minimums here.
I agree with the parties' assessment that the sentence of 120
months is appropriate.  I have considered, of course, the
statutory penalties, the advisory Guideline range, and the 3553
factors with respect to why I believe the 120 months is
sufficient, but not more than is necessary.

We can talk a little bit about Mr. Notman's personal
history.  Obviously this is an offense that is quite concerning,
particularly given it is the second federal conviction you have
for possessing child pornography.  The other aspect that makes
this concerning is the massive nature of this collection.  This

1   is the largest collection I have seen since I started sentencing

2   people and, of course, that is troubling as well.

3           When we look through your personal history, obviously

4   your age is of note.  You are 77.  You were born and raised in

5   Germany at a very chaotic time when World War II was going on

6   and your family came to the United States to flee that war

7   understandably and settled here in Iowa and you have as you

8   would have trauma relating to growing up in that kind of

9   environment.  You served in the United States Navy and you moved

10  around a lot as part of the Navy.

11          Your health is about what you would expect from

12  somebody of your age.  You have all the kind of health care

13  issues you would expect to see, but also with diabetes and an

14  endovascular stent which is a more serious condition for you.

15  You have bipolar which is a tough issue that you have to handle.

16  You have been classified by your treatment providers as being a

17  high risk to re-offend and we have certainly seen that borne out

18  by the fact that you have a second conviction here for

19  collecting these kind of materials.

20          You are obviously a smart man, you have a degree in

21  economics, and you have not been utilizing that particular

22  degree, you have been largely self-employed as an unpublished

23  writer.  Now, what you are writing about is somewhat of concern.

24  I understand this claim that the story you wrote about sexually

25  abusing and murdering a child was part of a treatment program,

1  but obviously that kind of fantasy writing is of concern;

2  however, that really is not going to impact the sentencing at

3  all here other than it is another use of the computer that we

4  can be a little concerned about.

5       You do have significant assets, including $61,000

6  sitting in a checking account now, and the likelihood that you

7  will in short order inherit almost $800,000 from your mother's

8  estate; but at this moment you don't have that money and so I

9  will base the fine upon what is available to you at this time.

10      So it is the judgment of the Court that you be

11  sentenced to 120 months imprisonment.  I will recommend that

12  they place you in Orlando if possible and if not in Orlando,

13  then anything in the southern parts of the United States that

14  are warmer.

15      I will impose a term of supervised release of five

16  years.  As part of the terms and conditions of supervised

17  release you will have all the standard conditions that you are

18  used to, obviously you cannot commit new crimes, can't have

19  drugs or alcohol, you can't have guns.  I will also impose the

20  special conditions here that have been requested and I want to

21  talk a little bit about the few that you have contested.

22      With respect to the computer, for the reasons the

23  government I thought very well outlined in page 11 of its

24  memorandum, I find that the computer restriction is necessary

25  here.  In particular, this is not a situation where you just had

1 child pornography on paper.  You have a massive, I mean, 118,000

2 images plus 300 video collection of child pornography that the

3 computer was integral to you assembling.  You located that child

4 pornography on the computer, you ordered through your computer

5 child pornography, you viewed, stored, converted, exchanged,

6 downloaded child pornography on your computer.  You wrote about

7 child pornography on your computer.  You have masturbated to

8 child pornography on your computer and so there is really no

9 less restrictive computer allowance that I can give you that

10 doesn't still keep you from doing those things that have been

11 criminal and problematic in the past.

12          With respect to the camera, because of the nature of

13 your collection, I am also concerned about you having a camera.

14 The litigation in this case regarding the suppression motion

15 described in some detail the nature of some of the very tiny

16 percentage of what you had, but those were essentially home

17 movie type videos that you were ordering online and viewing and

18 because those are created with cameras, I worry that when we

19 restrict your computer usage, you are going to turn to creating

20 your own child pornography because somebody who has a need to

21 collect this the way you have, having already gone to federal

22 prison once, coming out, and collecting this kind of massive

23 collection again, indicates to me that you don't have the

24 ability to control that need for child pornography and if we

25 prevent you from getting it through the computer, my concern is

naturally that you will start creating it yourself with a camera, especially given the history here of the type of pornography that you apparently enjoy.

With respect to the financial conditions, I will impose a fine in the amount of $15,000 and restitution in the amount of $3,000. The financial conditions that are part of your supervised release will lift as soon as those are paid. At the point those are paid off it is really none of our business how you are spending your money other than, of course, you can't buy child pornography anymore; but those conditions will remain in place until the financial conditions of your sentence have been satisfied so the special conditions in your case which I have looked at as individual and particularized needs based on your history and your characteristics include living in a halfway house, essentially a residential re-entry program as you come back into society after your prison term for up to 120 days. You can earn good time passes of up to six hours as part of that program.

You have a search condition which means the probation office has my authority to search you or your house, your car, any business you might have. If they have a reasonable suspicion that you are violating the law or you are not complying with these particular conditions of supervision, they can bring the marshals with them for their safety or yours if they have to conduct such a search.

1    You will have a mental health evaluation and will have

2  to follow up with whatever treatment they recommend, including

3  any medication that they recommend.  To the extent you can

4  afford to help pay for that, you will have to help pay for those

5  treatments.

6    You are ordered to pay restitution to J_Blonde in the

7  amount of $3,000 and you will have to cooperate with the

8  probation office in developing a monthly payment plan and

9  schedule of allowable expenses in order to repay that money.

10  You may also be required to participate in the IRS offset

11  program which may include garnishment of wages or seizure of any

12  income tax refunds until restitution is paid.  The fine also

13  will have those same restrictions.  You will have a fine of

14  $15,000 and again, you will have to cooperate with probation to

15  set up a payment plan and participate in the IRS offset program.

16    You will have to provide complete access to your

17  financial information to the probation office, including all

18  business or personal finances, including the trust fund that you

19  are about to inherit from your mother.  You will have a

20  restriction that prevents you from applying or soliciting or

21  incurring any further debt, including but not limited to loans,

22  lines of credit, or credit card charges as principal or cosigner

23  as an individual or corporate entity without first obtaining

24  written permission from the probation office.  Those particular

25  restrictions relating to the payment plan, the IRS offset

1 program, the financial access by the probation office, and the

2 ban on incurring any debt will lift as soon as those fines and

3 restitution are paid.

4 You will participate in a sex offender treatment

5 program, including psychological testing and polygraph

6 examination as directed by the probation office.  This may

7 include having to abide by certain supplemental conditions that

8 may include abstaining from any alcohol and participation may

9 include inpatient or outpatient treatment sessions.  The result

10 of any polygraph examination will not be used to revoke your

11 supervised release, but you should be aware that the person

12 examining you is a mandatory reporter and if you report any

13 sexual abuse, that will have to be reported to the authorities.

14 You shall not have any contact with any person under

15 the age of 18, including through electronic, mail, or otherwise

16 without prior approval of the probation office.  If the

17 probation office allows that contact to take place, you will

18 have to follow whatever guidelines they give you.  Incidental

19 contact is not prohibited under this.  If you are at the grocery

20 store and walk by a child, obviously that is not problematic,

21 but you shouldn't be hanging out in places where children

22 congregate.

23 You shall not view or possess any form of sexually

24 stimulating pornography, correspond with anybody in the business

25 of providing such material, or enter an adult entertainment

1  venue where sexually stimulating pornography is the primary

2  product of purchase or viewing.

3       You shall not possess for the reasons I outlined a

4  computer or any device with an internal, external, or wireless

5  modem without the prior approval of the probation officer.  If

6  computer use is approved, you will have to submit to unannounced

7  examinations of your computer equipment, installation of

8  monitoring hardware and software, and the possible removal of

9  such equipment for a more thorough inspection.  If you need a

10 computer for employment, which I don't anticipate here, you will

11 have to talk with your employer about those restrictions and the

12 probation office will walk you through that.

13      You may not possess any type of camera, including a

14 camera on a cell phone or a video recording device without the

15 prior approval of the probation office and you will have to

16 again comply with all the sex offender registry laws in the

17 state in which you reside after you come out of prison.

18      With respect to the restitution and the fine, I do

19 find that you have the ability to pay interest and so interest

20 will begin to accrue on both of those, both of those pieces of

21 the financial penalty if they are not paid within 15 days of

22 today.  You also have the $100 special assessment which I

23 understand you have already paid.

24      The last thing I want to talk to you about, Mr.

25 Notman, is your right to appeal.  You have 14 days from today to

1  file an appeal not only of the sentence I gave, but also the

2  suppression issue that you have a conditional Plea Agreement on.

3  If you want to appeal either one of those two things, the

4  sentence or the suppression or both, you have to let Mr. Wassmer

5  know and that paperwork has to be filed within 14 days or you

6  forever give up your right to challenge those decisions.

7            I know you have retained Mr. Wassmer in this case.  If

8  at some point you can no longer afford an attorney, we can have

9  you fill out paperwork and another attorney can help you at no

10  cost to you with that particular appeal.

11            With regard to forfeiture, that will be ordered

12  consistent with the Preliminary Order of Forfeiture already

13  filed in this case.

14            Mr. Westphal, anything I missed or that we need to

15  clarify?

16            MR. WESTPHAL:  Not from the government.

17            THE COURT:  Mr. Wassmer?

18            MR. WASSMER:  No, Your Honor.

19            THE COURT:  Okay.  Then we are adjourned and we will

20  get started with the next case just as soon as everybody moves

21  around.  I am going to stay up here, but feel free to move

22  about.  Thank you.

23            (Proceedings concluded at 11:43 a.m., July 24, 2015.)

24

25

1                CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5        I, Linda Faurote-Egbers, Federal Official Realtime

6  Court Reporter, in and for the United States District Court for

7  the Southern District of Iowa, do hereby certify that pursuant

8  to Section 753, Title 28, United States Code, that the foregoing

9  is a true and correct transcript of the stenographically

10  reported proceedings held in the above-entitled matter and that

11  the transcript page format is in conformance with the

12  regulations of the Judicial Conference of the United States.

13

14

15        Dated this 17th day of August, 2015.

16

17

18

19        /s/ Linda Faurote-Egbers
           Linda Faurote-Egbers, CSR NO. 622(IA)
20        FCRR, RMR, RPR, CSR (IA and IL)
           FEDERAL OFFICIAL COURT REPORTER
21

22

23

24

25